IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK11-82965-TLS |
| ) | A12-8043-TLS |
| DALE EDWARD PETERSON and ) | |
| KENNETTA MARIE PETERSON, ) | |
| ) | CHAPTER 7 |
| Debtor(s). ) | |
| CENTRIS FEDERAL CREDIT UNION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DALE EDWARD PETERSON and ) | |
| KENNETTA MARIE PETERSON, ) | |
| ) | |
| Defendants. ) | |

ORDER

This matter is before the Court on related motions arising in the bankruptcy case and in the adversary proceeding.

In the underlying bankruptcy case, Case No. BK11-82965, the Court is presented with a motion to compel and request for sanctions (Fil. #100) filed by Centris Federal Credit Union against the debtors, Dale and Kennetta Peterson; an objection by Mr. and Mrs. Peterson (Fil. #102); and a status report filed by Centris (Fil. #120). In Adversary Proceeding No. A12-8043 involving the same parties, the Court is presented with a motion to reconsider (Fil. #107) an earlier denial of a motion for summary judgment filed by Centris.

These are core proceedings pursuant to 28 U.S.C. § 157(A), (E), (I), and (J). The following constitute findings of fact and conclusions of law.

For the reasons stated below, the motion to compel and motion for sanctions filed by Centris in BK11-82965 (Fil. #100) is granted, and sanctions are awarded as described below. Further, in A12-8043, the motion to reconsider (Fil. #107) filed by Centris is granted, the order denying the motion for summary judgment (Fil. #104) is hereby vacated, and the motion for summary judgment (Fil. #21) filed by Centris is granted.

Background

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

There are many disputed facts involved in the relationship between Mr. and Mrs. Peterson and Centris. For that reason, this Court previously denied a motion for summary judgment filed by Centris in A12-8043. However, in doing so, the Court overlooked the existence of many undisputed material facts that have been established due to the failure of Mr. and Mrs. Peterson to respond to requests for admission that were duly served upon them.[1] As Centris correctly points out, pursuant to Federal Rule of Civil Procedure 36, the effect of failure to respond to a duly served request for admission is that the matter addressed is admitted. *See* Fed.R.Civ.P. 36(a)(3). Thus, as further discussed below, it was erroneous for this Court to have denied the Centris motion for summary judgment and, therefore, the motion to reconsider (Fil. #107 in A12-8043) is granted.

The following facts are uncontroverted due to admissions in the pleadings and/or by admissions arising from the failure of Mr. and Mrs. Peterson to respond to the requests for admission served by Centris:

1. Centris is a creditor of Mr. and Mrs. Peterson, having a claim against them in the principal amount of $13,109.08, plus accrued interest and other charges under applicable law. On or about November 23, 2007, Mr. and Mrs. Peterson executed and delivered to Centris an Open-End Voucher and Security Agreement. Pursuant to that agreement, Mr. and Mrs. Peterson granted Centris a security interest in a 1967 Chevrolet Camaro titled in the name of Kennetta Peterson, VIN #124377N163618 ("the Vehicle"). On November 26, 2007, Centris duly perfected its lien by notation on the Nebraska Certificate of Title to the Vehicle.

2. Mr. and Mrs. Peterson became in default to Centris for failure to make payments required under the terms of their loan documents. Centris filed a complaint in Douglas County Court on or about September 29, 2011, seeking to attach the Camaro and obtain a money judgment against Mr. and Mrs. Peterson. On October 5, 2011, the Douglas County Court issued its order of attachment in favor of Centris. However, Centris was unable to locate the Vehicle.

3. On November 30, 2011, Mr. and Mrs. Peterson filed for relief under Chapter 13 of the United States Bankruptcy Code at Case No. BK11-82965. This was at least the eighth bankruptcy filing by Mr. and/or Mrs. Peterson.[2]

---

[1] At the time, the Court anticipated Debtors would be filing additional discovery responses and a detailed response to the motion to compel by the May 20, 2013, deadline set by the Court, but they failed to do so.

[2] See Case Nos. BK96-80023, BK97-80806, BK97-81474, BK01-82208, BK05-81332, BK05-85309, and BK11-82079.

4. Both prior to and since the date of bankruptcy filing, Centris has made multiple informal and formal discovery requests for information regarding the location of the Vehicle. Mr. and Mrs. Peterson have at times failed to respond, and at other times provided inconsistent and/or evasive responses to the inquiries. Their responses have ranged from "don't know" to "in storage at Dino's Storage" to "it was repossessed." Lately, Mr. and Mrs. Peterson seem to have settled on a response asserting that they have not seen the Vehicle since it was trailered by a third party from their home to a storage unit at Dino's Storage in July of 2009. They claim that when they went to Dino's Storage to check on the Vehicle at the request of Centris, the Vehicle was missing.

5. Mr. and Mrs. Peterson have not filed a police report or, apparently, an insurance claim with respect to the missing Vehicle.

6. Notwithstanding Mr. and Mrs. Peterson's protestations that the Vehicle is missing and they do not know where it is, Dale Peterson has been photographed racing the Vehicle at numerous national hot rod association races both before and after the Vehicle supposedly went missing, including a race during the month prior to bankruptcy filing. The Vehicle was photographed at those races and Dale Peterson signed entry forms showing he was racing a 1967 Camaro.

7. In light of the foregoing information, and in light of its inability to obtain what it believed were credible answers from Mr. and Mrs. Peterson regarding the location of the Vehicle, Centris filed its motion to compel and motion for sanctions (Fil. #100). That motion was set for hearing on April 11, 2013. Mr. and Mrs. Peterson failed to appear at that hearing, but their attorney did appear. After hearing argument from Centris, the Court ordered Mr. and Mrs. Peterson and their attorney to appear for a live testimony hearing on Thursday, April 18, 2013, at which time Mr. and Mrs. Peterson were required to be prepared to provide missing documentation and to answer questions from Centris under oath and on the record. As ordered, Mr. and Mrs. Peterson did appear on April 18th and answered questions under oath posed by counsel for Centris, although they failed to bring records or obtain much of the information that they were aware Centris was seeking. At the conclusion of that hearing, the Court deferred ruling on the motion pending further order or resolution of the adversary proceeding. The Court also instructed counsel for Centris to file a status report by May 20, 2013, regarding Mr. and Mrs. Peterson's further compliance with the document and information requests by Centris that debtors, on the record, agreed to provide. The Court also gave Mr. and Mrs. Peterson the opportunity to file a detailed response to Centris's motion to compel and any other compliance by Mr. and Mrs. Peterson by May 20, 2013. (*See* Fil. #113 in BK11-82965.)

8. As of this date, Mr. and Mrs. Peterson have failed to submit a detailed response to the motion to compel and motion for sanctions. On May 20, 2013, Centris did file a status report stating that no additional information has been provided by Mr. and Mrs. Peterson, and further stating that some of the information provided at the hearing on April 18th was inaccurate.

9. The gist of Mr. and Mrs. Peterson's testimony at the April 18 hearing was that the Vehicle disappeared from Dino's Storage sometime after it was delivered there in July of 2009. Mr. and Mrs. Peterson claim that since the Vehicle disappeared, Dale Peterson has been racing an identical 1967

Camaro, but that it is a different Vehicle. Dale Peterson testified that he did race the identical 1967 Camaro after the Vehicle disappeared, that he does not know who owns the Vehicle he was racing, that it was dropped off to him at a racetrack by some people he did not know, that he did not know of any agreement to split winnings with the owner, that he personally maintained the car while it was in his possession for more than two years, and that he last saw it after a race in October of 2011. He claims he did not ask any questions or know any details about the Vehicle he was driving or even how it came into his possession and testified that he relied on his wife to handle the details. The Court finds that Mr. Peterson's testimony was evasive, disingenuous, and not credible.

10. At the hearing on April 18, 2013, Kennetta Peterson testified that after the Vehicle disappeared, she began searching for a replacement Vehicle and was put in contact with the owner of a silver 1967 Camaro by three guys at a used car lot in Fremont. She claims to have made arrangements to obtain the Vehicle from that person but could not identify any specifics. She testified that she previously could not remember the name of the owner and only found the name recently as she was preparing for the April 18th hearing. She asserts that the owner was an individual who lives in Maine and that she had planned to purchase the 1967 Camaro from him but was ultimately unable to do so. For that reason, he took it back. She also testified that she added blue paint and decals to the 1967 Camaro to make it look identical to the Vehicle, though she did not get permission from the owner to do so. Her rationale, she said, was that she did not want the tracks to know that they had "lost" possession of the Vehicle. The Court finds that Mrs. Peterson's testimony was also evasive, disingenuous and not credible.

Discussion

As indicated, I find that the testimony of both Dale and Kennetta Peterson regarding the Vehicle at the discovery hearing on April 18, 2013, was not credible. That conclusion is reached only after consideration of each of the following: (1) the Court's personal observation of Mr. and Mrs. Peterson during their testimony under oath at the April 18, 2013, discovery hearing; (2) the long and labored history of Centris's attempts to obtain information from Mr. and Mrs. Peterson prior to the April 18, 2013, hearing, the evasive, inconsistent and non-responsive answers provided prior to that time and their refusal to attend and/or answer questions when one of them did attend the first meeting of creditors even after it had been continued several times; and (3) the failure of Mr. and Mrs. Peterson to provide any additional information as requested subsequent to the April 18, 2013, hearing, including their failure to provide a detailed response to the motion to compel and motion for sanctions by the deadline set by this Court. I simply do not believe that there are two different identical 1967 Camaros that had been raced by Dale Peterson. I do not believe that a literal stranger delivered a 1967 Camaro drag car to Mr. Peterson at a racetrack without any formal or even informal arrangements regarding its use, maintenance, race fees, winnings, ownership and/or purchase obligations and then allowed him to keep possession of it for more than two years. I further do not believe that Mr. and Mrs. Peterson went through the time and expense to paint a second car and add decals to that car to make it look identical to the Vehicle. I conclude that Mr. and Mrs. Peterson have engaged in an intentional and concerted effort to prevent Centris from repossessing the Vehicle.

All of the uncontroverted facts cited in this order are established through the pleadings and the requests for admission served on Mr. and Mrs. Peterson and to which they failed to respond despite many opportunities to do so.[3] They also failed to submit a brief or a detailed response to the motion for summary judgment. Those admissions, combined with this Court's determination as to the lack of credibility with regard to Mr. and Mrs. Peterson's testimony on April 18, 2013, lead this Court to the conclusion that Mr. and Mrs. Peterson should be denied a discharge and that sanctions in the form of a judgment for all of the attorney fees Centris has incurred in attempting to locate the 1967 Camaro should be imposed.

Section 727(a) of the Bankruptcy Code sets forth conditions under which debtors may be denied a discharge if they have acted to conceal or transfer property to keep it from creditors. That statute provides as follows:

> (a) The court shall grant the debtor a discharge, unless —
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor . . ., has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>> (B) property of the estate, after the date of the filing of the petition;
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
> (4) the debtor knowingly and fraudulently, in or in connection with the case —
>> (A) made a false oath or account;
>> . . .
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets . . . .

11 U.S.C. § 727(a).

Denial of discharge is a harsh penalty, so § 727 is strictly construed in favor of the debtors. *Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011). After the moving party has established the elements of § 727, the burden of proof shifts to Mr. and Mrs. Peterson to explain the loss. *Id.* Mr. and Mrs. Peterson here did not meet that burden. Because I have found that Mr. and

---

[3]The requests for admission also established many other facts that would lead to denial of discharge (such as failure to disclose other assets), but it is not necessary to address those matters since the events regarding the Vehicle are sufficient to deny Mr. and Mrs. Peterson a discharge.

Mrs. Peterson have engaged in a concerted effort to conceal the Vehicle from Centris and that their testimony under oath was not credible, they are not entitled to a discharge under Chapter 7.

The Court has discretion to impose sanctions for a party's failure to comply with discovery orders. *Brown v. Spears (In re Spears)*, 265 B.R. 219, 222 (Bankr. W.D. Mo. 2001). Such sanctions may include the imposition of costs and fees in favor of the aggrieved party. *Id.* If the party's failure to comply with discovery is due to willfulness, bad faith, or fault, an appropriate remedy may be entry of judgment against him. *Chrysler Fin'l Servs. Americas LLC v. Hecker (In re Hecker)*, 430 B.R. 189, 195 (Bankr. D. Minn. 2010).

Because Centris asks for a judgment for its balance due as part of the adversary proceeding, and because this Court has determined to award attorney fees as a sanction, Centris is ordered to file an affidavit setting forth the current balance due on its loan obligation and setting forth the attorney fees and costs it has incurred in attempting to locate its collateral and obtain discovery from Mr. and Mrs. Peterson. After receiving that information, the Court will enter separate judgments in the adversary proceeding and the bankruptcy case, at which time this order will be deemed final.

THEREFORE, IT IS ORDERED that:

(1) The Motion to Reconsider filed by Centris Federal Credit Union (Fil. #107 in A12-8043) is granted and this Court's order (Fil. #104) denying Centris Federal Credit Union's Motion for Summary Judgment is hereby vacated;

(2) Upon filing of the affidavit by Centris referenced in this Order, a separate judgment in favor of Centris Federal Credit Union and against Dale and Kennetta Peterson shall be entered in A12-8043: (i) granting the motion for summary judgment; (ii) entering judgment for the balance due to Centris on its loan; and (iii) entering judgment denying Dale and Kennetta Peterson a discharge under 11 U.S.C. § 727(a)(2) through (5); and

(3) Upon filing of the affidavit by Centris referenced above, a separate judgment shall also be entered in BK11-82965 awarding sanctions in the form of a judgment for attorney fees and expenses against Mr. and Mrs. Peterson due to their concerted efforts to conceal the Vehicle from Centris Federal Credit Union, including their evasive and incomplete discovery responses, their failure to properly respond to the motion to compel and request for sanctions, and their testimony that was found to be not credible.

DATED:    May 23, 2013

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
Doug Lederer     *David Koukol

Sharon Hansen        Jerry Jensen

Movant (*) is responsible for giving notice to other parties if required by rule or statute.